**STATE ex rel. BANK COM'R v. WALKER.**

No. 15490—Opinion Filed June 16, 1925.

**1. Appeal and Error—Trial—Conclusiveness of General Finding.**

When a jury is waived and a cause is tried to the court and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and such finding, when reasonably supported by the evidence in the case, is conclusive on the Supreme Court upon all' doubtful and uncertain questions of fact so found.

**2. Appeal and Error—Subsequent Appeal—Law of Case.**

All questions of law determined in a former appeal become the law of the case, both in the trial court and on appeal, where the evidence is substantially the same.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by Bartlesville State Bank against James H. Walker, to recover on a promissory note. Judgment for defendant, and plaintiff appeals. Affirmed.

H. H. Montgomery and Norman Barker, for plaintiff in error.

J. L. Barnes, for defendant in error.

Opinion by FOSTER, C. This action was originally brought in the district court of Washington county by the Bartlesville State Bank against the defendants in error James H. Walker et al., to recover upon a certain promissory note in the sum of $1,000, together with interest and attorney's fees thereon.

From a judgment in favor of the plaintiff bank, the defendants in error appealed the case to the Supreme Court and this court, on July 10, 1923, reversed and remanded the cause with directions to grant a new trial. Walker v. Bank, 91 Okla. 231, 216 Pac. 928.

Upon remand, the cause was retried in the district court of Washington county on the 7th day of January, 1924, without the intervention of a jury, resulting in a general judgment in favor of the defendant in error.

Pending the disposition of the cause in the Supreme Court on the first appeal, the Bartlesville State Bank was declared insolvent and its assets taken over by the Bank Commissioner of Oklahoma, in whose name the action was revived.

Motion for a new trial was filed by the state of Oklahoma on relation of its Bank Commissioner, heard and overruled, and the Bank Commissioner appeals. Parties will hereinafter be referred to as they appeared in the trial court.

For a more detailed statement of the facts, reference is made to the opinion of the court written by Logsdon, Commissioner, in the first appeal. 91 Okla. 231, 216 Pac. 928.

As we view the case, the legal propositions raised and discussed by the parties in their briefs have practically been settled by the court in the opinion rendered in the first appeal.

In the former appeal, this court said in the syllabus:

"A negotiable instrument payable to a corporation and indorsed with its name, but such indorsement not showing to have been made by any authorized officer of the corporation, and where such purported corporate indorsement is followed by the personal indorsement of two corporate officers who take personal credit for the proceeds of the note at a bank where same is negotiated, such bank, knowing their relation to the corporation, the indorsee of such paper is not an innocent purchaser for value, nor a holder in due course as against the maker of such note who defends upon the ground of fraud."

It will thus be seen that our court has determined that the plaintiff is not an innocent purchaser for value, nor a holder in due course of the note sued on in the case at bar as against the defendant, and it remanded the case with directions to grant a new trial and permit the defendant to make proof of the allegations of fraud in the procurement of the note set forth in his answer, which offer of proof the trial court in the first trial had refused.

The legal status of the plaintiff as a bad faith purchaser of the note being thus fixed by the opinion in the first appeal, the defendant was entitled, as against the plaintiff, to any defense which could have been interposed had the note remained in the hands of the original payee thereof, Cherokee Cigar Company, and the judgment of the court was therefore justified if there was sufficient evidence introduced of fraud in the procurement of the note by the original holder, Cherokee Cigar Company, to support such judgment.

There is evidence in the record of a very positive character that R. S. Bradley and George R. McKinney, who were, respectively, president and secretary of the Cherokee Cigar Company, the payee in the note, and

known by the plaintiff bank to be such, falsely and fraudulently represented to the defendant that the assets of the company were in the sum of twelve or fourteen thousand dollars in excess of its liabilities; that it did not owe any indebtedness whatever, and that it had been earning large dividends upon its capital stock, and that the stock was worth two for one; that at the time these representations were made, the company was actually indebted in the sum of $12,535.54, and that its assets exceeded its liabilities only by about the sum of $3,362; that said company had not been earning any dividends for its stockholders and that the stock was practically worthless; that the plaintiff relied upon and believed these representations as a result of which the note in controversy was executed.

While this evidence was disputed by Bradley, the finding and judgment of the trial court of fraud in the procurement of the note is nevertheless reasonably supported by the evidence, and the judgment of the trial court on these doubtful and controverted questions of fact is binding in this court on appeal. Miller v. Thompson, 80 Okla. 70, 194 Pac. 103.

It is insisted, however, that there is no proof in the record of actual knowledge on the part of the plaintiff bank of the infirmity in the title of the Cherokee Cigar Company by reason of the fraud alleged in the procurement of the note, and that inasmuch as knowledge of the fraud on the part of those negotiating the note is not imputable to the bank, merely because one of them was shown to be an officer of the bank, not in active charge of the business of the bank, the bank must be regarded as an innocent holder of the note in due course.

This contention, we think, is met and overturned by the fact that on the first appeal this court found and determined that the plaintiff bank was not an innocent purchaser for value, nor a holder in due course of the note sued on, and the law of this case on this proposition has heretofore been conclusively settled by that decision. Courtney v. Gibson, 52 Okla. 769, 153 Pac. 677.

It may be stated that the finding of this court on the first appeal to the effect that the plaintiff was not an innocent purchaser and holder of the note in due course was based upon substantially the same evidence as disclosed here.

This evidence was to the general effect that the note sued on was payable to the Cherokee Cigar Company or order, and the company's indorsement does not show it to

have been made by any authorized officer. Hartman and Bradley, both directors of the company and one of them its president, took credit on their personal accounts at the plaintiff bank for $500 each, the face value of the note. McKinney, the cashier of the plaintiff bank and secretary-treasurer of the Cherokee Cigar Company, negotiated the sale of this note to the bank.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 879; 38 Cyc. p. 1977; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91. (2) 4. C. J. p. 1093; 2 R. C. L. pp. 224, 225; 1 R. C. L. Supp. p. 459; 4 R. C. L. Supp. pp. 94. 95: 5 R. C. L. Supp. p. 84.